## VAUGHAN, col. vs. BOWIE et al.

1. TAXATION: *For district school purposes.*
   The revenue act of March 25th, 1871, prohibited the levy of more than five mills tax in the rural school districts.
2. EQUITY JURISDICTION.
   A court of equity having jurisdiction of a part of the subject matter, will dispose of the whole case.
3. ——. *Statute conferring it; effect of.*
   The act of April 24th, 1873, conferring jurisdiction on courts of equity to enjoin the collection of illegal taxes and assessments, operated on suits pending at the time the act went into effect.

APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. READ FLETCHER, Special Judge.

*Attorney General Hughes.*

Called the attention of the court to act of 23d July, 1868, sections 18, 20, 21, 32. No estimate by trustee was made. The law is mandatory. *Clark* v. *Crane*, 5 Mich., 154. *Shawner* v. *Carter*, 2 Han., 115; Cooley's Const. Lim., 75.

County Court could not exceed a levy of five mills. Act of 25th March, 1871.

The State therefore, submitting the questions to this court, makes no legal objection to affirmance of the decree.

*M. L. Jones,* for appellees.

Cited and noticed on section 146, Rev. act of '71, and sections 18, 22, 32, 35, 37, 38, 40 of school law of 1868.

Equity will interfere to enjoin an illegal or void tax, where the collection would be attended with injuries cognizable on other grounds. High on Inj., 194, 216; Blackwell on Tax Titles, 563, 583; *Clayton* v. *Lafurgen,* 23 Ark., 137; *Osburne* v. *Bank, of U. S.,* 9 Wheaton, 738; *Burnet* v. *Cincinnati,* 3 Ohio, 73; *Downs* v. *Chicago,* 11 Wall., 108; *Williams* v. *Peinny,* 25 Iowa, 436; *Jeffersonville* v. *Patterson,* 32 Ind., 140; *Wood* v. *Draper,* 24 Barb., 187; *Heywood* v. *Buffalo,* 14 N. Y., 534.

Such as, in this case, multiplicity of suits, 1 Sto. Eq. Juris., 64 K, 66, and clouding of titles by sale, and deeds; and danger of sale of property having peculiar value; in which is no adequate legal remedy.

Certiorari not adequate, it must be by the court and never in vacation. Ba. Ab. Title Certiorari; Petersdorf Ab., same title; Comyn's Dig., same title; *Albany Water Works* v. *Albany Mayor's Court,* 12 Wend., 292; *The People* v. *Albany,* ib., 263; *Bradner* v. *Superintendents,* 9 Wend., 433; *Whittelsey* v. *Zane,* ib., 432; *Comstock* v. *Porter,* 5 Wend., 98; *Monroe* v. *Baker,* 6 Cow., 396; *Star* v. *Trustees of Rochester,* 6 Wend., 564; *Zinck* v. *Langton,* Douglas 794; *The King* v. *Eaton,* 2 Term. R., 89.

The court acquired jurisdiction, in any view, upon the passage of the act of 24th April, 1873, *pendente lite,* that act being remedial. 1 Kent's com., 458; also note (2) (a ;) *Underwood* v. *Lilly,* 10 Serg. and R., 97; *Tate* v. *Stoolzfoos,* 16 Serg. and R., 35; *Bleakney* v. *Far. and Mec. Bk.,* 17 Serg. and R., 64; *Hepburn* v. *Curts,* 7 Watts, 300; *Foster* v. *Essex Bk.,* 16 Mass., 244; Cooley's Const. Lim., 381.

S. W. WILLIAMS, SP. J.:

The appellees filed their complaint in chancery on the 18th of April, 1873, in the Jefferson Circuit Court, in which, in behalf

of themselves and others, tax payers of school district No. 22, in said county, they allege that an illegal school tax of fifteen mills per cent had been levied by the County Court on the tax payers of said district. Much was said in the bill which applied to and tended to show the illegality of the entire tax, on the ground that the five mills per cent allowed by law was not legally voted by the inhabitants of the district, and the answer contained much which was intended to sustain its legality, all having reference ι the time and manner of voting the tax by the citizens of the district.

This general statement is sufficient as to this; for, as the court below refused the injunction as to five mills per cent, both in the temporary injunction and the final decree, and as Bowie and his associates have not appealed from the decree as to the 5 mills, it will be useless to set out the lengthy allegations having reference only to this, as it is not of importance here, except upon the question of jurisdiction, the vote of the tax being *de hors the record*, and the subject of extrinsic evidence, and the whole tax being in litigation, the jurisdiction of the court below would seem to be clear upon this ground alone. To the decision of the case, however, upon this point we do not deem it necessary to go at length into the facts, as we shall decide the main question involved on other grounds.

The 146th section of the act of 25th March, 1871, in effect, prohibits any tax district such as number 22, not being a separate district in a city or town, from levying in any event, by vote or otherwise, exceeding five mills per cent. The language of the act is: "Such rate as may be determined on by the qualified electors of said district, in the manner prescribed by law, not exceeding five mills on the dollar." It is, therefore, clear that as to the ten mills per cent levied by the County Court, which the court below perpetually enjoined, the tax is illegal and void

upon its face, and could have been quashed upon certiorari, and needed no allegation or proof *de hors the record* to show its illegality. But being connected with the five mills per cent tax, the legality of which was contested on the ground of irregularity and illegality in voting it, which was matter *de hors the record,* and equity, having jurisdiction of a part, had jurisdiction of all. This case is, in that respect, like that of *Creedup et al.* v. *Franklin County, and Berry as Sheriff, ante,* and is in harmony with *Floyd* v. *Galbraith,* 27 Ark., 676, and *Oliver* v. *Railroad, ante.*

The only question presented is whether the court below had jurisdiction.

In the case *Murphy* v. *Harbison,* 29 Ark., 340, it was held that for a tax clearly illegal on its face, the remedy was at law, and this court declined to review the case of *Floyd* v. *Galbraith,* which first announced this doctrine, in which case there was a dissenting opinion, on the ground that the mooted question of jurisdiction was settled for the future by statute. Mr. Chief Justice English, who delivered the opinion of the court in that case, says: "The appellant, having a plain and simple remedy in a court of law, and averring in his bill no such facts as to bring the case within any of the established subjects of equity jurisdiction, the court below, according to the decision of this court in *Floyd* v. *Galbraith et al.,* 27 Ark., 676, properly sustained a demurrer to the bill. There was a dissenting opinion in that case, but we are not disposed to review the decision in the case now before us, because an act was passed shortly after the decision was made which was intended, perhaps, to settle the mooted question of jurisdiction. It provides that the judge of the Circuit Court may grant injunctions and restraining orders in all cases of illegal and unauthorized taxes and assessments by county, city or other local tribunals, boards or officers. Gantt's Digest, sec. 3451.

This reference by the Chief Justice was to the act of April 24th, 1873, which was approved on that day, and became a law ninety days thereafter, as it contained no clause giving it effect immediately, as required by the Constitution of 1868, if it was intended to have effect before ninety days. This act was in force several months before this cause was finally decided. The final decree was rendered November 23d, 1873. Even if the court did not have jurisdiction at the inception of this case, did not the statute cure the defect? All constitutional objection aside, and we see none, in this case, the effect of the statute is retrospective in its operation upon all undetermined cases. This court expressly recognized this doctrine in the case of .O'Bannon v. Ragan, decided at the present term, and that case was made an exception to the general rule regulating the effect of repealing statutes upon pending suits, on the ground that in the particular case the time allowed for an appeal by the new act in its effect upon that case, deprived the party practically of the constitutional right of appeal.

As no such question arises here, we think the act of 24th of April, 1873, applied to pending cases that remained undetermined at its passage. If the rule established in *Floyd* v. *Galbraith* applied to this case at all, then the law as then announced which denies a remedy in equity where the tax appears to be void on the face of the record, was changed by this act, and the jurisdiction was given. In delivering the opinion of this court in the case of *O'Bannon* v. *Ragan*, Mr. Justice Walker, after commenting upon the act of 29th April, 1873, which changed the mode of taking an appeal from a judgment of a justice of the peace, as prescribed in the Code, and shortened the time allowed therefor from sixty to thirty days, uses this language : "Presents a hardship which we would, if possible, mitigate by holding the operation of the act prospective, and not intended to

affect suits commenced, or the right of appeal from judgments rendered under the Code procedure. But the effect of the repeal will not permit us to do so. Sedgewick says that the repealed statute must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted and concluded whilst it was an existing law."

We see no constitutional obstacle to prevent the operation of the act of 24th of April, 1873, upon all cases pending at its passage. The effect given to this statute by us is well sustained. See *Foster* v. *Exeter Bank,* 16 Mass., 245; *Underwood* v. *Lilly,* 10 Serg. & Rawle, 97; *Tate* v. *Stoolzfoos,* 16 Serg. & R., 35; *Blakeney* v. *Farmers and Mech. Bank,* 17 Serg. & R., 64; *Hopburn* v. *Curts,* 7 Watts, 300.

Judge Cooley, in his work on Constitutional Limitations, says the bringing of suit vests no right to a particular decision, and the case must be determined on the law as it stands when the judgment is rendered. It has been held that a statute allowing amendments to indictments in criminal cases might constitutionally be applied to cases then pending, and it has also been decided that a statute changing the rules of evidence might be applied to pending suits, even under a constitution which forbade retrospective laws; and, if a case is appealed, and the law is changed pending the appeal, the appellate court must decide, according to the law in force when the decision is rendered. See Cooley's Const. Lim., 381.

The general rule is, that a party has no vested right in a defense based upon an informality not affecting his substantial interests. See Cooley's Const. Lim., p. 370. Here the Constitution of 1868, under which this suit was commenced, and the act of 24th of April, 1873, was passed, authorized the Legislature to confer such jurisdiction as it might see proper upon inferior courts. The act of 24th April, 1873, affected all pending suits

to which its subject matter applied, and the court properly enjoined the tax.

Although it would be sufficient to rest this case, as we do, upon the act which confers jurisdiction in all cases of illegal taxes, yet we .do not overlook another ground of equitable jurisdiction which exists in this case, to-wit: That this suit was brought by Bowie and many other citizens and tax payers of the school district, in behalf of themselves and other tax payers, to enjoin a tax, a part of which, "to wit: ten mills per cent." appeared to be illegal, and the illegality of the balance, if illegal at all, as claimed in the bill, depended upon facts *de hors the record,* while as to the ten mills there might be a remedy for each tax payer separately by certiorari, yet to give to all the tax payers the protection of the law from illegal taxation, it would require a multiplicity of suits at law. Mr. Justice Walker, in delivering the opinion of this court in the case of *Creedup* v. *Franklin County,* says: "And whilst we will sustain the jurisdiction of a Court of Chancery, upon this ground, under the state of case presented, that, as to part of the tax, its illegality had to be shown by extrinsic evidence, we will remark that there is another ground of equitable jurisdiction which should not be overlooked. In this case, as it is shown, the illegal tax thus assessed amounts to $11,923.91. These plaintiffs have sued in behalf of themselves and of the other tax payers of the county, this they may do in equity, but suppose we send them back to a court of law to assert their rights. We know that at the common law there can be no combination of parties, each tax payer must sue in his own right to remove the tax erroneously assessed against him ; what a multiplicity of suits at law must be brought in order to get redress for an injury which it is proposed to stop in a single suit in equity. We have no means of knowing of a certainty the number of tax payers in Franklin county, but may

suppose that they exceed two thousand. Of these perhaps five hundred may be able to assert their rights at law, whilst one thousand five hundred, who pay less tax, being in moderate circumstances, or too poor to employ counsel to stop the payment of an erroneous tax, ten times less than it would cost to employ counsel to prosecute suit. The mere suggestion of the situation, if left to redress at law, shows that it, in effect, would amount to a denial of redress to offer it to them. In such case chancery will interpose to prevent multiplicity of suits.

Although we have contented ourselves with deciding this case upon grounds strictly in harmony with our former decisions, we have not felt at liberty to omit some reference to this additional ground of chancery jurisdiction. Whether or not the court below had jurisdiction at the commencement of this suit, it was conferred by statute before the final decree was rendered, and we find no error in the same, in perpetually enjoining the collection of the ten mills tax, from which decree this appeal was taken.

Let the decree of the Jefferson Circuit Court in this cause be in all things affirmed.